### In re BROWN et al.

#### PETITION OF FIRST NAT. BANK OF PRINCETON, ILL.

(Circuit Court of Appeals, Second Circuit. January 11, 1910.)

#### No. 117.

BANKRUPTCY (§ 140*)—MONEY RECEIVED BY BANKRUPT AS BROKER—TRUST.

A claimant, who remitted money to brokers for the purchase of stocks, which were bought and paid for by the brokers, but afterward converted to their own use, cannot rescind the whole transaction and recover the money so sent from the trustee in bankruptcy of the brokers as a trust fund, although he may follow and recover the proceeds of the stocks, if sold by the brokers and such proceeds can be traced into the hands of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. § 140.*]

Petition to Review Order of the District Court of the United States for the Southern District of New York.

In the matter of A. O. Brown and others, bankrupts. Petition by the First National Bank of Princeton, Ill., to review an order dismissing its petition to reclaim money as a trust fund. Modified and affirmed.

See, also, 174 Fed. 339.

On August 13, 1908, the bankrupts, A. O. Brown & Co., who were then doing business in New York City as stock brokers, and are hereinafter called the brokers, received from the First National Bank of Princeton, Ill., hereinafter called the claimant, $1,787.50 for the purchase, and as the full purchase price, of 20 shares of the capital stock of the Atchison, Topeka & Santa Fé Railroad Company. These shares were forthwith purchased by the brokers as directed, but were very shortly thereafter converted to their own use.

On August 18, 1908, the brokers received from the claimant a further sum of $1,403.13 for the purchase, and as the full purchase price, of 25 shares of the stock of the Missouri Pacific Railroad Company. These shares also were duly purchased, and were likewise converted by the brokers.

Afterwards, on August 28, 1908, a receiver in bankruptcy for the brokers was appointed, and subsequently a trustee was elected. The receiver received in cash as the property of the bankrupt a sum in excess of the purchase price or value of said shares.

The claimant filed a petition in the District Court, stating the payments of said sums of money for the purchase of said shares and the failure of the brokers to deliver them, asserting that the moneys so paid came into the possession of the receiver, and praying that said moneys should be delivered to it. The District Court denied the petition, and the claimant has brought this petition for review.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thorndike Saunders, for petitioner.

Daniel P. Hays and Ralph Wolff, for respondents.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The theory of the claimant is that upon the conversion of its shares by the brokers it had the right to follow the purchase price as a trust fund. This also seems to have been the theory of the referee in bankruptcy and of the District Judge, who said in his opinion that, upon "showing that the stocks purchased by the broker were subsequently sold, he [the claimant] is in a position to rescind the whole transaction and make a claim upon his purchase money." The District Judge also said that the claimant might follow the purchase money, but held that the proof was insufficient to identify it in the bankrupt estate, and dismissed the petition.

While we approve the ultimate result reached by the District Judge, we think the ruling that the claimant had the right to rescind the whole transaction upon the conversion of its shares and follow the purchase price erroneous. The right to rescind a contract and recover that which has been parted with under it does not exist in a case like the present. That specific right is available only in cases of fraud, undue influence, or duress.

When the brokers, after purchasing the shares ordered and paid for by the claimant, wrongfully converted them, the claimant had an election of remedies:

(1) It might have brought an action of tort for the conversion.

(2) It might have waived the tort and sued for the proceeds of the shares—if in money—and also have followed such proceeds as a trust fund in the hands of the brokers or their bankrupt estate.

(3) Assuming that it was the obligation of the brokers under their contract, not only to purchase the shares, but to deliver them, the claimant had the right to treat the conversion as a breach of contract and sue for damages.

(4) Similarly, it had the right to treat the conversion as a discharge of the contract and sue in assumpsit upon the implied contract to refund the money paid.

But in the last case—as in the others—the right of action originated when the conversion took place. Then for the first time there was an implied contract to repay the moneys advanced to purchase the shares. Nothing which had taken place was annulled. The claimant's moneys had been expended precisely in accordance with its directions. Any trust attaching thereto had been fulfilled. There was no money in the brokers' hands clothed with a trust after the stocks ordered had been bought and paid for. And if there were any such money after the conversion, it was the proceeds of the shares, and not the purchase price thereof.

It follows, then, that while the claimant had a right of action in assumpsit—as well as other remedies—it had no right to follow the purchase price as a trust fund, and as its petition was based upon that theory it was properly dismissed. However much we may disagree

with the opinion of the District Court, its order of dismissal was right.

Under ordinary conditions we would not be expected to say more. Having ruled that the purchase price cannot be followed, we are not called upon to determine whether in case it could be followed it could be identified. But upon the fragmentary case presented upon the record it would seem that the claimant might have a meritorious demand —might be able to follow the proceeds of its shares—and we feel that we should, especially in view of the opinions of the District Judge and of the referee, briefly examine it.

It seems quite clear that, if the brokers received money for the shares, there were funds continually on hand from the time of the conversion to the failure in excess of any such proceeds. It is agreed that very much more than the price of the shares came into the hands of the receiver and trustee. In view of the presumptions with respect to the continuance of conditions, and that men will use their own money to pay their debts, it would seem that, conversion into money being assumed, the claimant might be able, according to the late decisions upon the trust fund doctrine, to follow the proceeds into the bankrupt estate.

The difficulty is that it does not satisfactorily appear how the brokers converted the claimant's shares. If they were delivered to pay a debt, undoubtedly the brokers' assets were not augmented by the transaction. On the other hand, we are by no means prepared to accede to the proposition that, if the shares were delivered in the fulfillment of antecedent contracts, moneys previously paid and on hand would not in law be treated as the proceeds thereof. Thus, in case the brokers by incurring an obligation received a sum of money, and, that money still remaining in their bank, subsequently delivered the claimant's shares in fulfillment of the obligation, it would seem that the moneys received ought to stand as the proceeds of the shares. But, in view of the form of the petition and the obscurity of the facts, we express no definite opinion upon these questions. We do think, however, that the petitioner should be given an opportunity to present these questions upon a new or amended petition, if it desires to do so.

In view of the fact that, had the rulings of the District Court been in accordance with this opinion, this petition for review might never have been brought, we think it equitable that no costs in this court should be taxed against the claimant.

The decision of the District Court is modified, by providing that it shall be without prejudice to further proceedings by the claimant as herein indicated, and, as so modified, is affirmed, without costs.