In re WETTENGEL et al.

Appeal of GEORGE.

(Circuit Court of Appeals, Third Circuit. December 22, 1916. Rehearing Denied February 9, 1917.)

No. 2144.

BANKRUPTCY ⊜140(3)—PROPERTY ACQUIRED BY TRUSTEE—MONEY DELIVERED TO BROKER—"WASHED SALE."

The trustee in bankruptcy of a brokerage firm acquires no right to money in the possession of the firm, which can be identified as money delivered to it shortly before the bankruptcy, to be applied on the payment for stock to be purchased by the firm under a contract providing that actual delivery was contemplated, where the firm merely ordered another broker to purchase the stock, and the following day ordered that broker to sell an equal amount of the same stock short, which order was filled by selling that stock, so that the firm never secured the stock, but was to settle with the other broker at the money difference; the transaction being what is known as a "washed sale."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. ⊜140(3).

For other definitions, see Words and Phrases, First and Second Series, Wash Sale.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Chas. P. Orr, Judge.

In the matter of A. T. Wettengel and another, individually and as partners trading as Wettengel & Co., bankrupts. The petition of Robert S. George, in behalf of G. L. Kolb, praying that the trustee be directed to pay petitioner certain money alleged to belong to said Kolb, was denied, and petitioner appeals. Decree vacated, and record remanded, with directions.

---

William D. Stewart, of Pittsburgh, Pa., for petitioner.

Simon Sher, of Pittsburgh, Pa., for trustee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Robert S. George, acting on behalf of G. L. Kolb, presented a petition in the bankruptcy of Wettengel & Co., praying that their trustee be directed to pay petitioner a certain $1,500 alleged to be the money of said Kolb. The trustee answered, admitting the identity of the fund, denied it belonged to Kolb, and alleged it was the property of the bankrupts. The matter was referred to the referee, who took testimony, found the ownership of the fund was in Kolb, and made report to the court, recommending the trustee be directed to pay the fund to him. Exceptions having been taken to such report, the court below sustained them, and entered an order dismissing the petition. Thereupon the petitioner, George, took this appeal.

The proofs fall within a narrow compass. On October 26, 1915, George directed Wettengel & Co., a brokerage firm, to buy for Kolb 100 shares of La Belle Iron Company common stock at $56 per share. On receipt of such order the firm on the same day instructed another brokerage firm to buy for it such an amount of stock. On October 27th George, having received notice from Wettengel & Co. that his stock had been purchased, paid them the $1,500 here in dispute, and received from them a statement of price, with credit for money paid, which recited:

"It is agreed between broker and customer that all orders for the purchase or sale of any article are received and executed with the distinct understanding that actual delivery is contemplated."

On November 28, 1915, the $1,500 was deposited by Wettengel & Co. in bank, where it remained when that firm went into bankruptcy the day following. From the proofs it appears that no stock was ever bought or held by Wettengel & Co. for George. What was done was this: Having on November 27th given an order to the second brokerage firm to buy 100 shares of La Belle Iron Company common stock, and that firm having on said day bought the same and having received bills of sale therefor, but having made no delivery to Wettengel & Co., the latter on the next day ordered the second firm to sell short for it the same number of shares of La Belle Iron Company common stock. Thereupon the second firm used the stock bought the 27th for Wettengel & Co. to fill the short order given by that firm on the 28th. The result was that no stock ever passed to Wettengel & Co., but the firms settled at the money difference. In other words, the transaction was what is known as a "washed sale."

It will thus be seen that what was contracted for by the parties when the $1,500 was received, namely, "the distinct understanding that actual delivery is contemplated," was not carried out by Wettengel & Co.; they never bought any stock for delivery to Kolb, and were never in position to deliver. In that respect the uncontradicted proof by a member of the bankrupt firm is: "If he [Kolb] came and

wanted that stock, we would either have to borrow it, or buy it in."
The case, therefore, resolves itself into the simple proposition: A
client furnishes a broker with funds on the agreement by the latter
to buy certain shares of stock for him and apply the payment made
to the purchase. He does not buy the stock, but has the money
earmarked in his possession when he goes into bankruptcy. It is
clear that before the broker went into bankruptcy, and until a pur-
chase was made, the broker was bound to return the money on re-
quest of his customer. Such being the situation before the broker
went into bankruptcy, it is clear that no right to retain such money
was created by his going into bankruptcy, and consequently no right
passed to the broker's trustee.

The order of the referee met the exact justice of the case, and
should be sustained. The decree below is therefore vacated, and the
record remanded, with directions to dismiss the exceptions to, and
confirm, the referee's report.